# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1972V
UNPUBLISHED

| | |
|---|---|
| TIMOTHY ELENTENY,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: February 1, 2023<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barré Syndrome<br>(GBS) |

*Edward Kraus*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Andrew Henning*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On December 30, 2019, Timothy Elenteny filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered from Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine he received on December 28, 2018. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although Respondent conceded entitlement, the parties were not able to settle damages.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

After hearing argument from the parties at a "Motions Day" proceeding, I find that Petitioner is entitled to an award of damages in the amount of **$187,830.03**, **representing $180,000.00 for actual pain and suffering, and $7,830.03 in unreimbursed out-of-pocket expenses.**

### I. Relevant Procedural History

This case was initiated on December 30, 2019. On December 14, 2020 (approximately one year later), Respondent filed a Rule 4(c) Report conceding entitlement. ECF No. 23. A Ruling on Entitlement was issued on December 16, 2020. ECF No. 25. After attempting to resolve the issue of damages for another year, the parties informed me in March 2022 that they were unable to reach an agreement as to the amount of pain and suffering. ECF No. 41. Petitioner filed a Damages Brief ("Br.") on May 5, 2022. ECF No. 43. Respondent filed a responsive Damages Brief ("Resp.") on August 11, 2022. ECF No. 50. I proposed that the parties be given the opportunity to argue their positions at a "Motions Day" hearing, at which time I would decide the disputed issues. ECF No. 52. That hearing was held on January 27, 2023, and the case is now ripe for resolution.

Petitioner argues that an award of $200,000 in past and future pain and suffering, plus future pain and suffering of $1,000 per year for the remainder of Mr. Elenteny's life expectancy, is appropriate. Br. at 2. Petitioner justifies his request by highlighting the severity of his GBS symptoms, particularly early in his course of treatment, the duration, and the permanency of his remaining sequelae, including ongoing neuropathic pain, facial weakness, and significant general weakness that has had a profound negative impact on his personal and professional life. Br. at 17. In addition, Petitioner requests $7,830.03 as reimbursement for unreimbursable out-of-pocket expenses. *Id.* at 19.

Respondent, by contrast, proposes that an award of $120,000 in pain and suffering is appropriate due, primarily, to Petitioner's substantial recovery by approximately one year after his vaccination. Resp. at 16. Respondent notes that while Petitioner's early treatment course was significant, he "largely recovered – evidenced by his returning to work, traveling, running, and hiking." *Id.* a 18. Respondent does not dispute Petitioner's out-of-pocket expenses of $7,830.03. *Id.* at 20.

### II. Relevant Medical History

Petitioner was 53 years old when he received influenza and Tdap vaccines on December 28, 2018 in Boulder, CO. Ex. 3 at 1. Prior to his vaccination, Mr. Elenteny owned and operated a wine distribution business, traveled frequently, and enjoyed running, basketball, and tennis. Ex. 8 at ¶2; Ex. 16 at ¶2; Ex. 17 at ¶2.

On January 10, 2019 (13 days after his vaccination), Petitioner presented to urgent care with a severe headache, back pain, and numbness and tingling in his hands, arms, and fingers. Ex. 11 at 7-9. He followed up with a new primary care doctor five days later with continued complaints of headache, back pain, numbness in his fingertips and legs, a pins and needles sensation in his feet, and spots in his vision. Ex. 12 at 8-10. A lumbar MRI was ordered. *Id.* When he returned two days later reporting back pain radiating down both legs, weakness in his legs, and difficulty toileting, he was referred to the ER for further evaluation. *Id.* at 40.

Petitioner presented to the emergency department on January 17, 2019. Ex. 4 at 8-11. He was admitted with concerns of infection, spinal compression, and other differential diagnoses. *Id.* It took five days of testing, including several MRI's, blood cultures, a lumbar puncture and an EMG/NCS to confirm a diagnosis of acute motor-axonal GBS. *Id*. at 35, 57, 75, 116-118, 1323. Petitioner's pain required treatment with gabapentin and opioids. *Id.* He received six IVIG treatments. *Id.* On January 29, 2019, after 12 days in the hospital, Petitioner was discharged to inpatient rehab, where he stayed for 31 additional days. Ex. 4 at 2-6; Ex. 5 at 2-8.

Petitioner began outpatient physical therapy on March 7, 2019. He continued to follow up with a neurologist and a pain management specialist through 2019. On March 26, 2019, Petitioner was able to walk with a walker, but had significant foot drop, and was unable to close his eyes due to significant facial weakness. Ex. 6 at 32.

By May 13, 2019, Petitioner could walk without an assistive device and had been able to hike with his wife, although he needed assistance walking downhill. Ex. 4 at 2023. By October 24, 2019, Petitioner was much improved, including almost fully resolved facial weakness, but continued to have numbness and tingling and was areflexic. Ex. 7 at 7. He reported that he had returned to work, but not yet traveling or driving. *Id*.

Petitioner states that he was unable to attend in-person medical appointments for much of 2020 due to the Covid-19 pandemic, but continued his home exercise program. Ex. 19 at ¶5. He returned to his neurologist on December 10, 2020, just under two years after his vaccination, where he reported that he had returned to "close to 90% of his pre-illness level." Ex. 15 at 17. He continued to have some lower extremity weakness, sometimes experienced changes in sensation in his face, and had pain, numbness, and changed sensation in his feet. *Id*. He reported that he had been able to start running again and that he was not taking any prescription medications. *Id*.

There are no treatment records specifically addressing Petitioner's GBS after December 2020.[3] Mr. Elenteny's primary care physician, Dr. William Dodson, III, submitted a letter, dated January 10, 2023, in which he stated that although Petitioner "has made a fairly good recovery overall, he continues to experience certain symptoms which are likely permanent at this point." Ex. 21 at 1. Dr. Dodson's letter describes ongoing pain in his fingers and toes, facial nerve damage that impacts eating and smiling, low stamina, and increased fatigue. *Id*. Petitioner, his wife, and his mother submitted affidavits in which they describe similar ongoing sequelae.[4] *See* Ex. 16, 17, 19.

### III.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

---

[3] Petitioner argues that a broken foot he suffered during a fall while hiking in June 2021 resulted from his ongoing GBS symptoms. Ex. 18 at 7, 18. The records, however, do not specifically reflect GBS symptoms as causing the fall.

[4] Petitioner described ongoing pain that has taken a toll on his mental health, as well as ongoing issues with facial expressions, eating, drinking, and talking, and chronically reduced energy. Ex. 19 at ¶9-11. Petitioner's wife described how his illness and sequelae prevented him from participating in physical activities with their teenaged sons, impacting the relationships. Ex. 16 at ¶5. Petitioner's mother, who is a nurse, noted that he continued to have impairments in balance, stamina, and agility, and "markedly reduced energy" levels. Ex. 17 at ¶4-5.

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). In *Graves,* the Court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it offers a reasoned understanding of the issues involved in pain and suffering calculations.

### IV.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his GBS. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole including the medical records and affidavits filed, all assertions made by the parties in written documents, and the parties' arguments during the hearing. Mr. Elenteny's medical records and affidavits provide descriptions of his treatment course and the pain and suffering he experienced

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

during his illness. In his brief, Petitioner primarily relied on *Hood v. Sec'y of Health & Human Servs.*, No. 16-1042V, 2021 WL 5755324 (Fed. Cl. Spec. Mstr. Oct. 19, 2021) to support the past/actual component of his demand.[6] The *Hood* petitioner spent 16 days inpatient, received two courses of IVIG treatment, had five months of outpatient rehab, and had ongoing sequelae, including fatigue and reduced stamina, that interfered with his employment and parenting. *Id*. at 2-4. Petitioner argues that his course was at least as severe as in *Hood*, but with a longer inpatient stay and more severe pain. Br. at 15.

Respondent acknowledges Petitioner's rigorous treatment course, but disputes the duration of treatment and the severity of any ongoing sequelae. Resp. at 16-17. He highlights medical records from October 2019 (ten months after vaccination), where Petitioner reported having returned to work, including travel,[7] and from December 2020 (two years after vaccination) where Petitioner reported 90% recovery. *Id*. at 16-18. Respondent argues that these facts justify a reduction to $120,000 from the higher amounts in other relevant vaccine cases. *Id*. at 17-18.

After reviewing the record in this case and considering the parties' written and oral arguments, I find that Petitioner suffered a moderate to serious GBS injury. I have noted in prior decisions that GBS constitutes a particularly alarming kind of vaccine injury – and that as a result, the pain and suffering award allowed should be a bit higher than average to account for the frightening nature of the condition. *Gross v. Sec'y of Health & Human Servs.*, No. 19-0835V, 2021 WL 2666685 at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2021). At the same time, however, the considerations that always impact how a pain and suffering award is calculated – level of pain, length of hospitalization and inpatient rehabilitation, degree and number of procedures for treatment, duration of treatment, and overall recovery – impact the final figure to be awarded.

During his treatment, particularly in the period soon after the onset of symptoms, Petitioner suffered severe pain (requiring several heavy pain medications), underwent several invasive tests while seeking a diagnosis, required a fairly long inpatient stay, and experienced a slow response to treatment, with significant improvement beginning approximately five months after vaccination. Ex.4 at 8-11, 35-57, 75, 116-118, 2023; Ex. 12 at 8-10. That said, Petitioner's recovery was good – with Petitioner largely able to return to his employment and recreational activities – within two years of vaccination. Ex. 15 at 17.

---

[6] Petitioner also cited *McRay v. Sec'y of Health & Human Servs.*, No. 19-0277V, 2021 WL 4618549 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) and *Fedewa v. Sec'y of Health & Human Servs.*, No. 17-1808V, 2020 WL 1915138 (Fed. Cl. Spec. Mstr. Mar. 26, 2020), both of which involved petitioners who were awarded $180,000 in past pain and suffering.

[7] The record from October 24, 2019 states both that Petitioner has resumed traveling and had not resumed traveling and is therefore not clear on the subject. Ex. 7 at 7.

I credit Respondent's arguments for why an award of $200,000 in past pain and suffering, as was awarded in *Hood*, is somewhat too high in this case. Although Mr. Elenteny experienced a similar course of treatment at the beginning, Mr. Hood's ongoing symptoms required a second round of IVIG treatment five months after his vaccination. *Hood*, 2021 WL 5755324 at *3. It took Mr. Hood approximately eight months to progress from a wheeled walker to walking with a cane, while Mr. Elenteny reported by May 13, 2019 (less than six months after his vaccination) that he did not need any assistive devices to walk. *Id.*; Ex. 4 at 2023. Further, Mr. Hood was unable to return to his prior profession due to his long-term fatigue and ongoing numbness in his feet, which rendered him unable to stand for longer than 15-30 minutes at a time, even six years after his vaccination. *Hood*, 2021 WL 5755324 at 5-6. These differences justify a lower award in this case.

On the other hand, I find that Respondent's recommendation of $120,000 is far too modest. Respondent's proposed award fails to properly recognize Mr. Elenteny's experience with his initial symptoms, diagnosis, hospitalization, and treatment course for his GBS, and the significant impact on his life. It is also unsupported by comparable decisions, and relies primarily on the argument that Mr. Elenteny's course of treatment was of a shorter duration than petitioners in similar cases and therefore justifies a significantly lower award.[8] Respondent, however, did not provide any real explanation for how he quantified the amount of the decrease in his proposed award from the prior decisions. While Respondent made reasonable arguments for distinguishing Petitioner's reliance on *Hood*, he did not cite any cases justifying the number he proposed.[9]

The appropriateness of a future component is also disputed. Mr. Elenteny's substantial recovery does not mean that Petitioner has fully recovered from his GBS and has no ongoing sequelae. It is common for petitioners to experience ongoing symptoms of GBS, such as numbness and fatigue, even with a good recovery. Petitioner's primary care physician, as well as the filed affidavits, describe how Petitioner has ongoing problems with numbness and pain, facial nerve damage, and reduced energy. *See* Ex. 16, 17, 19, 21. Petitioner argues that his ongoing sequelae, which he argues are similar

---

[8] To this end, Respondent discussed *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) and *Johnson v. Sec'y of Health & Human Servs.*, No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018), which involved awards of $170,000 to $180,000 in past pain and suffering.

[9] In fact, a review of cases featuring awards in the range proposed by Respondent further illustrates why his proposed figure is too low. *See e.g.*, *Castellanos v. Sec'y of Health & Human Servs.*, No. 19-1710V, 2022 WL 1482497 (Fed. Cl. Spec. Mstr. Mar. 30, 2022) (award of $125,000 in pain and suffering for a GBS course including 9 days hospitalization, 5 IVIG treatments, no pain reported in the hospital, one month of inpatient rehabilitation, substantial recovery by five months after vaccination, and no significant loss of employment, psychological distress, or impact on quality of life).

to the ongoing limitations in *Hood*, justify the same future pain and suffering award as awarded in that case. Br. at 18.

The *Hood* case, however, is once again distinguishable from Mr. Elenteny's experience. After his GBS injury, Mr. Hood was unable to return to his job as a butcher due to his physical limitations. *Hood*, 2021 WL 5755324 at *9. In that case, there was substantial evidence of the permanent and substantial impact of Mr. Hood's injury on his livelihood, including testimony by two life care planners and a vocational expert. *Id.* at 5-6. The same is not so evident here. Although certainly Mr. Elenteny continues to experience sequelae and has not fully returned to his pre-GBS baseline, he has not provided sufficient evidence to support his claim for future pain and suffering (such as evidence showing a comparable degree of work limitations due to GBS sequelae). Although the fact that Petitioner continues to treat (approximately once a year) for his ongoing symptoms is not in itself sufficient to justify the future award he seeks, his residual symptoms do appear to be lingering long-term. These ongoing sequelae are most appropriately addressed by factoring Petitioner's future pain and suffering into the magnitude of the past component.

Accordingly, balancing the severity of Petitioner's GBS injury and the impact on him personally against his substantial recovery, and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that **$180,000.00** in total compensation for actual/past pain and suffering is reasonable and appropriate in this case, with no future component awarded.

## V.     Award for Past Unreimbursed Expenses

Petitioner requests $7,830.03 in past unreimbursable expenses. Br. at 19. Respondent does not dispute this sum, and therefore Petitioner is awarded it without adjustment. Resp. at 20.

## Conclusion

For all of the above reasons, the I award **Petitioner a lump sum payment of $187,830.03,** (representing $180,000.00 for Petitioner's actual pain and suffering and $7,830.03 for unreimbursable medical expenses) **in the form of a check payable to Petitioner Timothy Elenteny.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.